### BAKER HOTEL OF DALLAS, Inc., v. ROGERS.

#### No. 13096.

Court of Civil Appeals of Texas. Dallas.

Dec. 19, 1941.

Rehearing Denied Jan. 16, 1942.

alleged to have been received as the result of an unlawful assault upon him by Frank Hickman, house detective in the service of the Corporation, while acting within the scope of his employment. On submission, the jury found that appellee was assaulted and injured as alleged, found in his favor, damages, actual $250, and exemplary $500, but found that, Hickman was not acting within the scope of his employment at the time. Both sides moved for judgment; appellant, on the finding that Hickman was not acting within the scope of his employment at the time; and appellee moved for judgment non obstante veredicto, on the idea that the finding just mentioned was not authorized, in that, it appeared indisputably, as a matter of law, that, at the time, Hickman was acting within the scope of his employment. The latter view was approved by the court, appellee's motion for judgment non obstante was sustained, and judgment entered accordingly for both actual and exemplary damages, as assessed by the jury, from which, this appeal was taken.

Appellant's brief contains no assignments of error eo nomine, but, in lieu, presents as grounds for reversal, seventeen points, which may be grouped under four heads, as follows: (1) That the evidence showing Hickman was not acting within the scope of his employment at the time, appellant could not be held liable for the alleged assault; (2) that, in any event, the evidence showing that Hickman exceeded his authority, and no evidence showing that his unlawful act was either authorized or ratified by appellant, exemplary damages were not recoverable; (3) because the court erred in its charge on the measure of damage, in that, it permitted recovery for physical pain appellee may suffer in the future, there being no evidence justifying the charge; and (4), because of the improper and highly prejudicial argument to the jury by appellee's counsel.

On original submission, we sustained the third ground mentioned, that is, that the court erred in permitting the jury to consider physical pain appellee may suffer in the future. This contention was sustained because, as we then viewed the case, there was no evidence justifying a charge in regard to future pain. However, on re-examination, at the earnest insistence of appellee in his motion for rehearing, we have reached the conclusion that we were mistaken in saying there was no evidence justi-

Callaway & Reed and O. D. Montgomery, all of Dallas, for appellant.

W. Glenn Polk, of Dallas, for appellee.

LOONEY, Justice.

At a former day, we reversed and remanded this cause for the reason stated later. Tom Rogers, a colored porter in the service of Baker Hotel of Dallas, Inc., sued the Corporation to recover damages, actual and exemplary, for personal injuries

fying the charge. While the evidence on the point is slight and rather inconclusive, yet we do not think it can be correctly said there was no evidence. However that may be, as appellant does not complain of the verdict as being excessive, we think the question becomes immaterial, for, if the verdict is not excessive, no harm could have resulted from the alleged error in permitting consideration of an element of damages not authorized by evidence. In the case of Gulf, C. & S. F. Ry. Co. v. Conley, Tex.Civ.App., 236 S.W. 521, 528, the issue submitted to the jury covered mental anguish and physical suffering in the future, to which an assignment of error was made, and was overruled. In that case, as in the instant case, there was no assignment complaining that the verdict was excessive, with reference to which, the court stated: "It may be that the counter proposition meets appellant's contention, and would be sufficient reason for overruling the assignment, and some of our Courts of Civil Appeals have so held." This case was reviewed by the Supreme Court and reversed on other grounds. See Tex.Com.App., 252 S.W. 737. So, we have reached the conclusion that error was committed in reversing and remanding the cause for the reason stated, hence believe the assignment in question should have been overruled.

As the case was reversed for the reason just stated, we did not examine the other questions presented, which will now be done.

Appellant contends that, the judgment below should have been in its favor on the finding that Hickman, house detective, was not acting within the scope of his employment at the time he assaulted and injured the appellee.

The evidence as to Hickman's employment, and its scope, is undisputed; he alone gave testimony on that point, which, in substance, was that, as house detective at appellant's Hotel, he was authorized to enforce its rules, regulations and instructions, and maintain law and order among the guests and employes of the Hotel. One of the rules he was required to enforce provides that, "Any employee found with long-bladed knives or concealed weapons on their persons will be discharged and turned over to the authorities."; he was also authorized to discharge an employe for the violation of this rule.

The record discloses that, when appellee went to the Hotel to enter upon his work the morning of the day he claims to have been assaulted and injured (the latter part of January, 1938), he brought a package containing a small pistol claimed by him to be out of repair, and left it with a Mr. Neugent, timekeeper for the Hotel, in charge of the package room at the back door of the Hotel. The package was left there in compliance with a rule of the Hotel. Appellee's contention was that, he intended to take the package out at the noon hour to have the pistol repaired. Discovering that the package contained a pistol, Mr. Neugent notified the assistant manager of the Hotel of that fact, who said he would send house detective Hickman down to attend to the matter. So, when appellee went for the package at the noon hour, Hickman appeared, took the pistol from appellee, who, being questioned by Hickman as to why he had it, stated he was taking it out to have it repaired. At this juncture, it seems that Mr. Hickman, testing whether the pistol was in working order, fired it into a sill in the elevator shaft; thereupon, it seems that appellee, becoming frightened, ran out the back door of the Hotel, but was caught by Hickman, led back and held under arrest until a representative of the Dallas Police Department, previously notified by Hickman, came, and appellee was turned over to said officer. Mr. Hickman testified that he discharged appellee from appellant's employ, and further that, in the discharge of his duties as house detective, he had previously made other arrests. (We deem it appropriate to state at this point that the Police Department of the City, on ascertaining that the pistol was out of repair, as contended by appellee, discharged him without preferring any charges.)

Thus, we think it is obvious that, Hickman was authorized to arrest and detain any employe violating, or thought to be violating the rule above quoted, and turn the culprit over to the authorities. Believing, as he testified he did, that appellee was violating the rule, Hickman was within the scope of his employment in making the arrest and in detaining appellee pending arrival of a representative of the Police Department of the City. This being true, we think it follows, as a matter of law, that appellant would be liable for an assault committed by Hickman in furtherance of the business committed to him, although it may

have been unnecessary, ill-advised and wanton, because appellant had set in motion the agency that resulted in the wrong; the assault, if it occurred, grew out of the exercise of an authority which was conferred upon Hickman by the appellant. The pertinent doctrine announced in Wood on Master & Servant, 2d Ed. 566, is that, "The question is not whether the particular act was authorized, but whether the act done grew out of the exercise of an authority which the master had conferred upon the servant." And again, at page 577, it is announced that, "If it was an act done in doing that which he employed the servant to do, although done contrary to the master's will, against his instructions, and without his knowledge, although unnecessary to accomplish the work, ill-advised, malicious or wanton, he (the master) is liable because he has set in motion the agency that produces the wrong."

■■ This Court judicially knows that, in making arrests and holding the arrested party in custody, it is often necessary to resort to force; this probability is inherent in such an enterprise, hence it would follow as a matter of law that if, on the occasion in question, Hickman used more force than was necessary in furtherance of the master's business, that is to say, unnecessarily assaulted and injured appellee, appellant would be liable under the doctrine of respondeat superior. This was clearly announced by Chief Justice Hickman in Home Telephone & Electric Co. v. Branton, Tex.Civ.App., 7 S.W.2d 627, 629, saying, among other things, that: "Whenever the very nature of the employment expressly or impliedly authorizes the servant to use force, and in the exercise of that authority he negligently or willfully uses more force than is necessary to further his master's business, and thereby injures a third person, the master is clearly liable."

There being no conflict in the evidence in regard to the nature and scope of Hickman's employment, it follows, as a matter of law, we think, that whether the arrest and detention of appellee was accompanied by violence and injury, as testified by him, or was consummated without violence, as Hickman testified, nevertheless, under the doctrine of respondeat superior just quoted, the conclusion is inescapable that, in either case, Hickman would have been within the scope of his employment.

We do not deem it necessary to dwell at length upon the evidence in regard to the conduct of Hickman on the occasion, except to state that, appellee testified he was unnecessarily and cruelly assaulted and injured by Hickman, which was denied by Hickman; but on submission, the jury found the issue for appellee, and awarded him damages, both actual and exemplary.

■ The issue submitted was: "Do you find from a preponderance of the evidence that at the time and on the occasion in question Frank Hickman was acting within the scope of his employment at the Baker Hotel?"; to which, the jury answered "No." The submission of this stereotype phrase, without definition or explanation, in our opinion, was the submission simply of a legal question, requiring the jury to express its opinion on a question of law. The real issue was whether the alleged assault immediately grew out of the exercise of an authority which appellant had conferred upon Hickman; however, as the facts in regard to the nature and scope of Hickman's employment were undisputed, we think it follows, as a matter of law, under the doctrine of respondeat superior heretofore quoted, that he was acting within the scope of his employment at the time, and this, without regard to whether appellee's version or Hickman's version of the transaction is correct. Hence, we do not think the court erred in ignoring the finding of the jury on the question of law submitted, and in rendering judgment for appellee, notwithstanding the finding.

■ Appellant contends that, in no event, should it be held liable for exemplary damages, in that, it was not shown that the alleged unlawful act of Hickman was either authorized or ratified. Obviously, there was no evidence showing, or tending to show, that Hickman was expressly authorized to commit such an act, or any evidence tending to show ratification except the fact that Hickman reported to Mr. Baker, President of the Corporation, that he found appellee with a pistol, arrested him, turned him over to the City authorities, and discharged him from the service of the Corporation. Mr. Baker ratified the acts of Hickman in the respect just mentioned. Appellee testified that, on the following day, in an effort to be reinstated, he sought an interview with Mr. Baker, failed to see him, did see his stenographer, who said Mr.

944

Baker did not care to see appellee, as no one who carried a gun was wanted; and, on the following day, called Mr. Baker over the 'phone and asked to be reinstated, identifying himself as the boy Hickman beat up; and explained that Hickman hit him in the mouth with a pistol and beat him up pretty bad, to which Mr. Baker replied that they didn't permit anyone who carried a weapon to work at the Hotel, and that he was discharged. If it can be said that this fragmentary 'phone conversation sufficiently apprised Mr. Baker of the alleged wrongful assault, yet the retention by appellant of Hickman in its service alone would not constitute a ratification of the alleged unlawful assault. See Home Telephone & Electric Co. v. Branton, Tex.Civ.App., 7 S.W.2d 627, 629. In Gulf C. & S. F. Ry. Co. v. Kirkbride, 79 Tex. 457, 15 S.W. 495, 496, Judge Henry, speaking for the Supreme Court, stated the reason for the doctrine; he said: "We think it would be extending the doctrine of ratification too far to apply it to such a case as the one before us. Notwithstanding his own fault, the servant may be a useful and deserving one, and worthy of promotion and encouragement. We do not think it either just to the individual, necessary for the general good, or a wise public policy, to so arbitrarily punish the master for lenity to a servant otherwise deserving, and perhaps penitent. The rule invoked might lead to the discharge of an innocent and useful servant, when wrongfully accused or suspected, because his employer could not be certain in advance what would be the result of a future trial, and, instead of taking the risk of being charged with a pecuniary liability for which he was not otherwise responsible, might discharge the servant." We are of opinion, therefore, that the recovery of exemplary damages was improper, hence the judgment in that respect will be reformed.

Appellant urges eight points (assignments), complaining of the action of the court in overruling its motion for a new trial, because of the alleged improper and prejudicial argument to the jury by counsel for appellee. The record fails to disclose that any objection was made to the argument during its progress, either openly, or privately to the court, or that it was objected to before the retirement of the jury; or that appellant moved for the discharge of the jury because of the ineradicable prejudicial effect of the argument; nor were any bills of exception reserved in regard to the matter. It seems that appellant had a stenographic report of the argument of counsel, from which certain alleged improper statements were culled and presented for the first time in its motion for a new trial, the stenographic report being offered in its entirety as evidence at the hearing on the motion.

We think objection should have been made at the time the alleged improper argument was made, either openly, or privately to the court; at least, before the retirement of the jury; or, if appellant deemed the argument so prejudicial as that neither an explanation or withdrawal by counsel, nor an instruction by the court, would have rendered the argument harmless, request should have been made to withdraw the case from the jury and discharge the panel. We do not think a litigant should be permitted to lie in wait, take chances on a favorable verdict and, being disappointed, sally from ambush and, for the first time, complain of an improper argument in the motion for a new trial.

Notwithstanding the unusual and irregular procedure pursued, we have given due consideration to the questions presented. Doubtless, at points in his argument, counsel wandered somewhat from the record, but, in our opinion, nothing was said of such harmful nature that, if objected to, or brought to the attention of the court, could not have been rendered harmless, either by an explanation, withdrawal, or instruction by the court. We therefore overrule appellant's points, or assignments, based upon the alleged improper and prejudicial argument of counsel.

In harmony with the views herein expressed, appellee's motion for rehearing is sustained; our former judgment, reversing the judgment and remanding the cause for further proceedings, is set aside, and the judgment below will be reformed by deducting therefrom the amount of exemplary damages awarded, and, as reformed, the judgment below is affirmed. In view of the situation apparent of record, we think the costs incident to the appeal should be equally divided and paid by the parties, respectively, with the exception of the costs incident to the hearing on motion for new trial, which, in our opinion, should be taxed against the appellant, and it is so ordered. The original opinion filed herein is withdrawn.

Reformed and affirmed.