## BOUNTY BALLROOM et al. v. BAIN.
### No. 5851.

Court of Civil Appeals of Texas. Amarillo.
March 29, 1948.

Rehearing Denied April 26, 1948.

McNees & McNees and Curtis E. Hill, all of Dallas, for appellants.

Carden & Hemphill, of Dallas, for appellee.

STOKES, Justice.

This suit was instituted by the appellee, J. C. Bain, against the appellants, George Lontos and R. H. Myers, partners and operators of a dance hall in the city of Dallas known as The Bounty Ballroom, and against P. W. Chandler, a special police officer of the city of Dallas. The purpose of the suit was to recover damages for personal injuries inflicted upon the appellee by Chandler on January 31, 1942, as the result of an assault and battery committed upon the appellee while he was a guest of The Bounty Ballroom.

The case was submitted to a jury upon twenty-eight special issues, four of which were not answered but no issue is raised concerning the failure of the jury to an-

swer them. The jury found that upon the occasion in question, Chandler inflicted personal violence upon appellee by striking him on the left side of his head; that the infliction of such violence was intentional on the part of Chandler; that such violence was the proximate cause of the injuries sustained by appellee; that appellee paid a fee for admission as a guest to the Bounty Ballroom; that, at the time and on the occasion in question, Chandler was working at the Bounty Ballroom pursuant to an arrangement between the operators of the ballroom and the city of Dallas whereby Chandler was performing services for the operators of the ballroom for which service the operators paid the city of Dallas. The jury further found that the eviction of persons from the ballroom was one of the services Chandler performed for the operators of the ballroom; that, in evicting appellee from the ballroom, Chandler was acting in furtherance of the business of the operators thereof; and that the damages suffered by appellee as a result of the assault and battery committed upon him by Chandler was $5,000. Appellants filed a motion for judgment in their favor upon the verdict of the jury and appellee filed a motion in which he urged the court to disregard fifteen of the special issues and the jury's answer thereto and render judgment in his favor for the amount found by the jury to constitute his damages. Appellants' motion was overruled, appellee's motion sustained and the court thereupon rendered judgment in favor of appellee for the sum of $5,000. Appellants, Lontos, Myers and Chandler duly excepted to the judgment and, their motion for a new trial being overruled, they again excepted, gave notice of appeal and perfected their appeal to the Court of Civil Appeals of the fifth district at Dallas. The case has been transferred to this court by an order of the Supreme Court.

The record shows that on July 30, 1941, the city of Dallas adopted an amended ordinance known as the Dance Hall Code in which it undertook to regulate the operations of public dance halls. Section 8 of the code provides that dance halls of the class of the one here involved shall, in addition to supervisions provided by the ordinance, have on duty in or about the premises from the time they open until thirty minutes after closing, a suitable and qualified person, approved by the director of public welfare of the city of Dallas, to supervise the activities of such dance halls and to see that they are conducted in an orderly and decent manner, the compensation of each such person to be governed by private contract between himself and the operators of such dance hall. It further provides that, in the event the operator of any such dance hall desires to have a uniformed, special police officer of the city of Dallas stationed at such dance hall to supervise the activities therein, he shall make application to the chief of police of the city of Dallas for the special detailing of such an officer, but that such officer shall not be a regular member of the police department. It further provides that the operator of such dance hall having such an officer in attendance shall pay a fee of $5 in advance for each day such dance is to be conducted, such sum to be paid to the assessor and collector of taxes of the city of Dallas on the first day of each month for each night during the succeeding month such dance hall shall be operated. It provides that such fee shall be placed in a special fund and used to pay for the services of such special officers; that the fund shall not be supplemented by any appropriation by the city of Dallas; and that the presence of such special officer at any public dance hall shall not relieve the proprietors, operators or managers thereof from responsibility for any violation of the laws of the state or ordinances of the city of Dallas. It is further provided that the special police officer requested by any dance hall operator shall be under the direct supervision and control of the chief of police who shall have authority to assign and reassign such officer to such dance hall, the operators of which have requested the presence of such special officer, without giving any officer an assignment for any particular length of time. It contains provisions for commissions to be issued to such special officers, limited to the premises to which they may be assigned and they shall be chosen from a special register prepared

by the Civil Service Board for such purposes. Finally, the section provides that the director of public welfare and the chief of police shall, with the approval of the city manager, advise the Civil Service Board of the qualifications necessary for the proper selection of such officers, in addition to those requirements provided by the Civil Service Board; that such officers may be of either sex and shall be subject to the provisions of the Civil Service regulations of the city of Dallas.

The jury found that Chandler was working at The Bounty Ballroom pursuant to an arrangement between the appellants as operators thereof and the city of Dallas whereby Chandler performed services for appellants and that they paid the city of Dallas for such services. Appellant Myers testified, in effect, that when he observed disturbances in the ballroom, he would call Chandler and direct him to settle them; that, if he did not want Chandler's services, he could stop· paying the $5 per day; and that, if the services were not satisfactory, he would register a complaint with the city authorities. He said however, that Chandler's services were satisfactory and well worth the wage being paid to him.

From the findings of the jury and the testimony it will be seen that appellants availed themselves of the option provided by the dance hall code of the city and, instead of employing an attendant of their own choice, as under the ordinance, they had a right to do, they arranged with the city to furnish a special police officer to perform the services of supervising the activities of the dance hall and attending to the duties necessary to ensure its conduct in an orderly and decent manner as provided by the regulatory code. The testimony shows that, on the night in question, appellee went to the dance hall, paid the entrance fee and delivered his overcoat to a young lady attendant to be deposited in the cloak room. He then took his seat at a table in the ballroom and prepared to partake of a drink from a bottle of gin which he carried with him to the ballroom. He failed to find the bottle in his coat pocket where he thought it was,

returned to the cloak room and requested the young lady in charge there to hand him his overcoat. The request was granted and, when he failed to find the bottle in his overcoat, he became annoyed and accused the young lady of removing it. She denied the charge and a colloquy ensued in which appellee used some language that attracted Chandler's attention. He thereupon went to the scene of the dispute and his interference resulted in his striking appellee upon the left side of his head with some instrument, the nature of which is not shown. Chandler then ejected appellee from the ballroom and commanded him to "go home and sober up." The next day appellee developed a form of paralysis and his injuries proved to be permanent.

Appellants present the case upon fourteen assignments of error but in their brief they concede that the controlling issue is presented by their contention that, in the special issues submitted to the jury which were disregarded by the court, the jury found in their favor all ultimate facts concerning negligence and proximate cause; that Chandler was not employed by them; and that the court erred in disregarding the findings of the jury and rendering judgment against them unless the city ordinance pertaining to dance halls and the detail of a special police officer makes such officer their agent or employee and that they are responsible for his acts in inflicting the injury upon appellee.

■■■ It is the general rule, well established in this state as well as other jurisdictions, that public dances and dance halls are proper subjects of regulation under the general police power of the state because of the frequency with which they are attended by disorders, disturbances and breaches of the peace and it has been judicially determined that the city of Dallas, operating under a home rule charter, has authority to regulate public dance halls. Ex parte Newberg, 140 Tex.Cr.R. 211, 143 S.W.2d 786; Bungalow Amusement Co. v. City of Seattle, 148 Wash. 485, 269 P. 1043, 60 A.L.R. 166; People ex rel. Duryea v. Wilber, 198 N.Y. 1, 90 N.E. 1140, 27 L.R.A.,N.S., 357, 139 Am. St.Rep. 809, 19 Ann.Cas. 626; State v. Ro-

senfield, 111 Minn. 301, 126 N.W. 1068, 29 L.R.A.,N.S., 331, 137 Am.St.Rep. 557; Whitcomb v. Vigeant, 240 Mass. 359, 134 N.E. 241, 19 A.L.R. 1439.

Prior to the enactment of the amended ordinance designated as the Dance Hall Code, the city commission of Dallas had enacted a similar ordinance which provided that all night clubs or cabarets, where food or beer or wine was served and where patrons were provided with a place to dance, should have in attendance at all times during a dance a special police officer of the city, for which the operators of such dance halls should pay the sum of $5 per day to the city assessor and collector of taxes. In the case of Ex parte Newberg, supra, the ordinance was attacked as being unconstitutional and the Court of Criminal Appeals held that it violated the provisions of the Fourteenth Amendment to the Constitution of the United States for reasons well expressed in the opinion. The basis of the holding was that, to require a police officer of the city to be in attendance at dances, and that his wages of $5 per day be paid by the operators of the dance hall, infringed upon the private right of contract and that it was the duty of the city to furnish police service and protection where needed, citing City of Chicago v. Weber, 246 Ill. 304, 92 N.E. 859, 34 L.R.A.,N.S., 306, 20 Ann.Cas. 359; Waters v. Leech, 3 Ark. 110 and O'Neal v. Providence Amusement Co., 42 R.I. 479, 108 A. 887, 8 A.L.R. 1590.

Under the prior ordinance, operators of dance halls were required to employ policemen of the city of Dallas and they were also required to pay the wages or salaries of such policemen. They had no alternative and were not permitted to comply with the regulatory provisions of the law by the selection and employment for such service of any person other than a policeman of the city. That requirement was the portion of the ordinance which the Court of Criminal Appeals found to be obnoxious and in conflict with the provisions of the Fourteenth Amendment. After the former ordinance had been held to be unconstitutional, the city commission enacted the amended ordinance under which appellants

were operating at the time the injury to appellee was inflicted. They seek to apply to this case and to the ordinance here involved the same principals that were applied by the Court of Criminal Appeals in the Newberg case and contend that Chandler, being a uniformed special policeman, detailed by the authorities of the city to perform services at the Bounty Ballroom, his wages being paid out of city funds and by the city officials from a fund collected from appellants and others as a license or tax, and he being under the direct supervision and control of the chief of police, his duties were public in their nature and were such as the city was obligated to furnish. They conclude that Chandler was necessarily performing a public duty and was employed by the city of Dallas and appellants were therefore not responsible for his acts or conduct.

We are not in accord with appellants in this contention. There are cases reported from other jurisdictions in which ordinances of a similar nature to the prior ordinance of the city of Dallas and involved in the Newberg case were upheld upon the theory that they were not unreasonable and that the duty of protecting persons and citizens from dangers and annoyances, carried with it the right to employ the most effective means, including the right to designate agents or servants for the performances of such duties and impose the cost thereof upon the managers and operators of such institutions as theaters, cabarets and dance halls. Tannenbaum v. Rehm, 152 Ala. 494, 44 So. 532, 11 L.R.A.,N.S., 700, 126 Am. St.Rep. 52; City of New Orleans v. Hop Lee, 104 La. 601, 29 So. 214; Harrison v. Mayor, etc., of City of Baltimore, 1 Gill, Md., 264.

In our opinion however, the Court of Criminal Appeals was undoubtedly correct in holding the former ordinance of the city of Dallas to be in conflict with the provisions of the Fourteenth Amendment to the Constitution of the United States. The obnoxious provisions of the former ordinance were those which required operators and owners of dance halls and other similar institutions to employ policemen of the city of Dallas for such services and in

effect denied such operators the privilege of complying with the regulatory provisions of the law by employing qualified persons of their own choice to perform such functions. The amended ordinance, which is here involved, does not contain those obnoxious provisions. Under its provisions, the owners and operators of such institutions are merely required to have on duty in or about dance halls, from opening to thirty minutes after closing time, suitable persons approved by the director of public welfare, to supervise activities of such dance halls. They are not restricted in the matter of choice as to whom they shall employ, so long as they are qualified under the ordinance. The compensation of such persons is to be governed by private contract between the operator and the persons so employed. The ordinance then provides a means by which such operators are afforded the privilege and option of availing themselves of the services of a uniformed, special policeman. They are not required to employ policemen but, in the event they take advantage of the privilege afforded by the ordinance, they are required to pay into a special fund maintained by the city five dollars per day to be devoted to the salaries of such policemen. We find nothing obnoxious or objectionable in these provisions. The amended ordinance does not deprive appellants of their right of freedom of contract, as did the former ordinance, but merely extends to them the option of availing themselves of a service maintained by the city and when they do so, as they did in this case, the effect is simply to enter into a voluntary contract with the city. In our opinion, therefore, Chandler was, as a matter of law, and under the undisputed evidence in the case, the employee, agent and servant of the appellants on the occasion when the injury was inflicted upon appellee. We have not been cited to any Texas case in which this identical question has been discussed and our own search of the authorities has failed to reveal such a case. Our holding is supported by eminent authority from other states, however, where the same conclusion we have expressed was based upon what we consider to be sound legal principles. We refer to the cases we have already cited, namely, City of Chicago v. Weber; Waters v. Leech; and O'Neal v. Providence Amusement Co., supra, and the many authorities there cited.

It was shown by the testimony that neither of the appellants was personally responsible for the assault made upon appellee by Chandler, that is, that neither of them personally participated in it. In fact, the testimony warrants the conclusion that neither of them knew anything about it until after it happened and appellants earnestly contend, therefore, that they were in no way responsible for it. The contention is based however, upon the premise that Chandler was not their employee, agent or servant, but an employee of the city of Dallas and serving the city as a policeman. As we have already indicated, we are not in accord with appellants in this contention. In our opinion, appellants are legally responsible and liable for the consequences of Chandler's act, even though they did not personally direct it or participate in it and knew nothing about it until after it happened. In this we are well supported by the holdings of our own courts in the following cases: Hudson et al. v. St. Louis Southwestern Ry. Co., Tex.Com.App., 293 S.W. 811; Missouri, K. & T. Ry. Co. of Texas v. Brown, Tex.Civ.App., 135 S.W. 1076; Dillingham v. Anthony, 73 Tex. 47, 11 S.W. 139, 3 L.R.A. 634, 15 Am.St.Rep. 753; Marek v. Southern Enterprises, 128 Tex. 377, 99 S.W.2d 594; Baker Hotel of Dallas v. Rogers, Tex.Civ.App., 157 S.W.2d 940.

The question of whether or not the particular act of Chandler in making the assault upon appellee was personally directed or authorized by the appellants is of no consequence. The testimony is undisputed that it was done in accomplishing that which Chandler was employed to do, that is, keep down disturbances and eject from the ballroom those whose conduct was disturbing and obnoxious to other guests although, in performing it, Chandler acted in a manner contrary to that in which appellants would have had him do it. According to the evidence, the assault was unnecessary to accomplish the work Chandler was employed to perform. It was malicious

and wanton and went far beyond what the evidence indicates was necessary to eject appellee even if his actions were such as to warrant his ejection, which is questionable. Since Chandler was the employee of appellants and the act was performed as such, appellants were liable for the consequences under the doctrine of respondeat superior. The testimony was undisputed that Chandler was authorized to use force if necessary in ejecting persons from the ballroom. In exercising that authority he negligently and willfully used more force than was necessary but in doing so he was furthering the business of the appellants and they are clearly liable for the injury inflicted and the damages which resulted to appellee. Home Telephone & Electric Co. v. Branton, Tex.Civ.App., 7 S.W.2d 627. In the case of Baker Hotel of Dallas v. Rogers, supra, the court was dealing with a question very similar to the one presented in this case. In that case it appears that Rogers, a colored porter in the service of the hotel, received personal injuries as a result of an unlawful assault made upon him by one Hickman, the house detective in the service of the hotel company, while acting within the scope of his employment. The assault was unjustified and not specifically authorized by the hotel company but he was authorized to enforce its rules and regulations and to maintain law and order among the guests and employees of the hotel. In carrying out his duties in that respect he made the unwarranted assault upon Rogers and, this being true, the court held that, as a matter of law, the hotel company was liable for the assault because the company had set in motion the agency that resulted in the wrong. It was said that the assault, if it occurred, grew out of the exercise of an authority which was conferred upon Hickman and the company was therefore responsible for it. The other authorities cited above are to the same general effect and in our opinion, the law is against appellants' contention.

■ Appellants next complain of the action of the court in disregarding fifteen of the special issues and in refusing to render judgment for them because all of such special issues were answered by the jury in their favor. The special issues disregarded by the court were found by the jury in favor of appellants. In answering those special issues, the jury found that Chandler was not acting as a supervisor of the activities; that he was not acting as an employee of appellants; that the assault did not grow out of Chandler's duties as an employee of appellants; that he was not acting on their behalf; that he did not have general authority from them, and other similar findings. We find no error in the action of the court in disregarding the special issues. The undisputed evidence showed as a matter of law that Chandler was the employee of appellants. The question of his authority, as well as the question of appellants' liability for his unlawful acts, have already been discussed and found against appellants as a matter of law. Appellants could not delegate their responsibility to Chandler or any other person and, since Chandler was their employee, agent and servant, and the injury and damage suffered by appellee resulted from the unlawful acts which grew out of his employment by appellants, they were responsible therefor and in our opinion, the court did not commit error in disregarding the special issues.

We have carefully considered all of the assignments of error presented by appellants and in our opinion none of them reveals reversible error. The judgment of the court below will therefore be affirmed.