

# THE ATTORNEY GENERAL
## OF TEXAS

January 13, 1987

**JIM MATTOX**
**ATTORNEY GENERAL**

Honorable Al Luna
Chairman
Committee on Science & Technology
Texas House of Representatives
P. O. Box 2910
Austin, Texas    78769

Opinion No. JM-619

Re: Whether a municipality may adopt an ordinance prohibiting the consumption of alcoholic beverages by persons operating motor vehicles

Dear Representative Luna:

You ask whether a home rule city may adopt an ordinance prohibiting the consumption of alcoholic beverages by persons operating motor vehicles. Specifically, you ask whether such an ordinance would be preempted by the Texas Alcoholic Beverage Code, by The Uniform Act Regulating Traffic on Highways, article 6701d, V.T.C.S., or by any other Texas law.

A municipal ordinance may not conflict with state legislation. City of Brookside Village v. Comeau, 633 S.W.2d 790, 796 (Tex. 1982), cert. denied, 459 U.S. 1087 (1982). A city is preempted from regulating in a field if the city's regulation is expressly prohibited, if the legislature intended state law to exclusively occupy that field, or if the city regulation conflicts with state law even if state law is not intended to occupy that field. See generally Attorney General Opinions JM-226 (1984); H-1071 (1977). The state's entry into a field of legislation does not automatically preempt that field from municipal regulation. City of Brookside Village v. Comeau, 633 S.W.2d at 796. Additionally, because a home rule city's powers derive directly from article XI, section 5, of the Texas Constitution, limits on those powers must appear with unmistakable clarity. See Tex. Const. art. XI, §5; Lower Colorado River Authority v. City of San Marcos, 523 S.W.2d 641, 643 (Tex. 1975); City of Sweetwater v. Geron, 380 S.W.2d 550, 552 (Tex. 1964). Whether the Alcoholic Beverage Code preempts the proposed ordinance must be considered in light of these general rules.

Texas case law indicates that the Alcoholic Beverage Code does not automatically preempt all municipal ordinances which regulate alcoholic beverages. For example, in Pitre v. Baker, 111 S.W.2d 359 (Tex. Civ. App. - Beaumont 1937, writ dism'd), the court held that nothing in the Liquor Control Act (now recodified as the Alcoholic Beverage Code) took from a home rule city the power to restrict areas in which beer and liquor could be sold. A number of courts have

followed <u>Pitre</u>.  <u>See, e.g.</u>, <u>Young, Wilkinson & Roberts v. City of</u> <u>Abilene</u>, 704 S.W.2d 380, 383 (Tex. App. - Eastland 1985, writ ref'd n.r.e.) (and cases cited therein).  In contrast, in <u>Royer v. Ritter</u>, 531 S.W.2d 448 (Tex. Civ. App. - Beaumont 1975, writ ref'd n.r.e.), a divided court struck down a city ordinance which prohibited package stores from operating on certain holidays and which required that package stores close at a certain hour.  The opinion of one justice in the case requires an affirmative grant of power to regulate alcoholic beverages.  A concurring opinion and a dissenting opinion present different views.  Because the three justice panel in <u>Royer v. Ritter</u> was divided, however, the case does not provide a cohesive rationale. Moreover, as indicated above, the Texas Supreme Court consistently holds that it is necessary to look to the constitution and legislation not for grants of power to home rule cities but only for limits on their powers.  <u>See, e.g.</u>, <u>Lower Colorado River Authority v. City of</u> <u>San Marcos</u>, supra; <u>Forwood v. City of Taylor</u>, 214 S.W.2d 282 (Tex. 1948); <u>see also</u> <u>Le Gois v. State</u>, 190 S.W. 724 (Tex. Crim. App. 1916). Accordingly, preemption of the proposed ordinance depends upon the scope of the fields regulated under various provisions of the code.

Section 1.06 of the Alcoholic Beverage Code provides:

> Unless otherwise specifically provided by the terms of this code, the manufacture, sale, distribution, <u>transportation, and possession of</u> <u>alcoholic beverages shall be governed exclusively</u> <u>by the provisions of this code</u>.  (Emphasis added).

The language of this section is clear.  In Attorney General Opinion JM-112 (1983), this office determined that section 1.06 prohibits a city or county from enacting an ordinance banning the possession of open containers of alcoholic beverages in motor vehicles.  Nevertheless, the city of Houston submitted a brief in response to your request which recognizes the preemptive effect of section 1.06 but which alleges that the ordinance in question does not constitute regulation in the areas covered by section 1.06.

The areas in section 1.06 of "possession" and "transportation" are of particular importance to the instant case.  An ordinance prohibiting the consumption of alcoholic beverages while operating a motor vehicle necessarily regulates possession to some degree because to consume an alcoholic beverage, one must possess the beverage.  <u>See</u> Alco. Bev. Code §105.06 (consumption <u>or</u> possession is an offense under certain circumstances); <u>see also</u> Attorney General Opinion JM-112. Similarly, because the proposed ordinance addresses consumption while operating a motor vehicle, it would also constitute a regulation of the transportation of alcoholic beverages.

It has been suggested, however, that the proposed ordinance regulates only the act of consuming alcohol while operating a motor vehicle, not the act of possessing an alcoholic beverage.  This

reasoning may be described most charitably as disingenuous. It ignores the fact that to consume an alcoholic beverage, one must possess the beverage. Under a criminal law analysis, possession could conceivably be deemed a lesser included offense of consumption. Under Texas law, consumption alone is less culpable than possession and may be merely evidence of possession or of driving while intoxicated. See Parr v. State, 575 S.W.2d 522, 526 (Tex. Crim. App. 1978) (consumption of intoxicating liquor not a crime). Moreover, viewing consumption as a separate criminal offense from possession does not separate consumption as a separate field of regulation under a preemption law analysis of section 1.06 of the Alcoholic Beverage Code or of the "driving while intoxicated" statute, article 6701l-1, V.T.C.S.

Thus, the case at hand is not like Banknote Club v. City of Dallas, 608 S.W.2d 716 (Tex. Civ. App. - Dallas 1980, writ ref'd n.r.e.). In Banknote Club, the court held that the Alcoholic Beverage Code's permit provisions preempt only the regulation of establishments with regard to the sale of alcoholic beverages. Id. The permit provisions do not preempt ordinances and fees relating to other occupations or activities in which the permittee might engage on the same premises. Id. In contrast, the proposed ordinance regulates in a field which is not separate from the field regulated by section 1.06 of the code. It operates in the same field, but with more stringent proscriptions.

At one time in Texas' history, municipal regulation of milk elicited almost as much concern as the regulation of alcoholic beverages raises today; the legal history of the milk struggle is instructive. In City of Weslaco v. Melton, 308 S.W.2d 18, 21 (Tex. 1957), the Texas Supreme Court considered whether a state statute which fixed grades of milk preempted a municipal ordinance which prohibited the sale of raw milk. The court upheld the ordinance because it did not attempt to alter the grades of milk set by the state; it merely prohibited the sale of one grade. 308 S.W.2d at 19-20. This case stands for the proposition that more stringent municipal regulation may, in some instances, constitute a separate field of regulation. In Jere Dairy, Inc. v. City of Mt. Pleasant, 417 S.W.2d 872 (Tex. Civ. App. - Texarkana 1967, writ ref'd n.r.e.), however, the court addressed a much closer case. The Jere Dairy case involved an ordinance requiring grade A milk deliveries three times per week. The city acknowledged that a state statute and regulations preempted the field of grading and labeling but asserted that frequency of delivery constituted a separate field of regulation. 417 S.W.2d at 873. The court noted that the city's delivery regulation indirectly attempted to add a quality of freshness to the state specifications for Grade A milk distributed in the city. 417 S.W.2d at 874. The court struck down the more stringent municipal ordinance because it constituted "an entry into the field occupied exclusively by the state statutes and regulations" and therefore violated article XI, section 5, of the Texas Constitution. Id. The Texas Supreme

Court recently cited the Jere Dairy case with approval. See City of Brookside Village v. Comeau, 633 S.W.2d 790, 796 (Tex. 1982).

The instant case is analogous to the Jere Dairy case. As indicated, Houston's brief admits the preemptive effect of section 1.06 but asserts that consumption constitutes a separate field of regulation. The proposed ordinance attempts to effect the laudable goal of preventing accidents caused by the consumption of alcoholic beverages by operators of motor vehicles by prohibiting the consumption of any amount of alcoholic beverage. But in so doing, the ordinance enters a field regulated exclusively by section 1.06 of the Alcoholic Beverage Code. If this more stringent goal is to be effected, it must be effected through amendments to the state statutes. In light of this response to your question regarding the preemptive effect of the Alcoholic Beverage Code, it is unnecessary to address whether other Texas laws preempt the ordinance in question. See generally V.T.C.S. art. 6701l-1 (prohibiting driving while intoxicated); cf. Knott v. State, 648 S.W.2d 20 (Tex. App. - Dallas 1983, no writ) (municipal ordinance cannot proscribe conduct which is proscribed by the state's penal provisions); Parr v. State, 575 S.W.2d at 526 (act of consuming intoxicating liquor not proscribed).

## S U M M A R Y

Section 1.06 of the Texas Alcoholic Beverage
Code preempts an ordinance enacted by a home rule
city which prohibits the consumption of alcoholic
beverages by persons operating motor vehicles.

Very truly yours

JIM MATTOX
Attorney General of Texas

JACK HIGHTOWER
First Assistant Attorney General

MARY KELLER
Executive Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Jennifer Riggs
Assistant Attorney General